UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Stye Lamar Coleman,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) | C/A No. 9:24-cv-03158-TMC-MHC<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Stye Lamar Coleman ("Plaintiff"), a federal inmate proceeding pro se, brings this action pursuant to the Federal Tort Claims Act, alleging that the Bureau of Prisons ("BOP") staff at FCI Bennettsville committed medical malpractice. ECF No. 66.

Before the Court is Defendant's Motion for Summary Judgment ("Motion"). ECF No. 126. After the Court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedures and the possible consequences if he failed to adequately respond to Defendant's Motion (ECF No. 127), Plaintiff filed a Response in Opposition to the Motion. ECF No. 133. The matter is ripe for review.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2), (D.S.C.). Because Defendant's Motion is dispositive, this Report and Recommendation is entered for review by the District Judge. For the reasons that follow, the undersigned recommends that Defendant's Motion be granted.

# BACKGROUND

## I. Procedural History

Plaintiff initially filed his Complaint on May 22, 2024. ECF No. 1. With leave of court, he filed the operative Second Amended Complaint on November 6, 2025.[1] ECF Nos. 65, 66.

The Second Amended Complaint named the United States of America as a Defendant, in addition to two individual BOP employees, Ms. Sinclair (Head Recreation Supervisor at FCI Bennettsville) and Dr. Onuoha (medical provider at FCI Bennettsville). ECF No. 66 at 2–3. In his Second Amended Complaint, Plaintiff alleges that on August 23, 2022, Plaintiff fell forehead first into the cement because of a missing bolt in the sit-up machine that he had been using for two months straight. *Id.* at 5. According to Plaintiff, Ms. Sinclair did not have the equipment bolted to the cement ground, and she "covered up the scene weeks later with yellow tape." *Id.* at 4–5.

Plaintiff further alleges that Dr. Onuoha "refused to use concussion protocol," even though Plaintiff received a "violent blow to the skull" as part of the fall. *Id.* at 4. According to Plaintiff, Dr. Onuoha's "plan of course for medical treatment was not professional[] to a prisoner with those rights." *Id.*

Plaintiff alleges that he sustained a twisted chest cavity, four smashed bones in his neck vertebrae, aggravated arthritis in his neck and lower spinal area, back and head lacerations, and swelling and pain in his neck. *Id.* at 5. He also contends that he had to pay for X-rays, or he would not have received them. *Id.* He seeks ten million dollars in actual and punitive damages. *Id.*

The three Defendants moved to dismiss all claims against the individuals and one negligence claim against the United States. ECF Nos. 77, 84. On April 1, 2026, the undersigned

[1] For a detailed summary of the procedural history leading up to the filing of the Second Amended Complaint, see the Report and Recommendation dated April 1, 2026. ECF No. 94 at 2–4.

issued a Report and Recommendation recommending that the Motions to Dismiss be granted. ECF No. 94.

On August 11, 2026, the District Judge issued an Order adopting that Report and Recommendation and dismissing all claims alleged against Ms. Sinclair and Dr. Onuoha, as well Plaintiff's negligence claim alleged against the United States based on failure to secure exercise equipment. ECF No. 121. Following the District Judge's Order, the only claim remaining in this action is Plaintiff's claim against the United States for medical malpractice. *Id.* at 121.

## II. Evidence in the Record

According to BOP medical records, Plaintiff was seen by a nurse at FCI Bennettsville Health Services on August 23, 2022, for an injury that occurred while Plaintiff was "working out on equipment and fell forward on face." ECF No. 133-1 at 36. Examination notes document the presence of a wound, which the notes describe as "superficial scrap[e] x 3 to right forehead above the eyebrow, right temple, and upper middle forehead[;] Swelling." *Id.*

The next day, Dr. Onuoha "had face time with [Plaintiff]," who was "asking for back x-ray for sprain[]." *Id.* at 35. Dr. Onuoha counseled Plaintiff "that a back x-ray at this time will be of low yield and he should continue with pain medications as recommended and return to the clinic as needed." *Id.*

On August 29, 2022, Plaintiff submitted a Sick Call Request, noting that he had a pain level of 10 from the following medical problems: "Head, neck & back injury, as well as eye and headaches, throwing up, and sweating." *Id.* at 34. That same day, on Dr. Onuoha's orders, x-rays of Plaintiff's skull and spine were taken. *Id.* at 30–33. The radiologist's report documented "Unremarkable skull radiographs" showing "no acute fracture" and "no soft tissue abnormality in the scalp." *Id.* at 30. The radiologist's report found "[m]ild dextroscoliotic curvature in the lower

thoracic spine" but "[o]therwise unremarkable thoracic spine radiographs." *Id.* at 31. As for the x-rays of the cervical spine, the radiologist's report found "[c]hronic compression of C5 and C6 vertebral bodies without radiographic evidence for acute fracture or misalignment," "[m]inimal degenerative disc change at C4-5 and C5-6," and "[m]inimal facet arthropathy in the lower cervical spine." *Id.* at 32.

On September 6, 2022, Dr. Onuoha saw Plaintiff at Health Services for follow-up on the spinal x-rays following Plaintiff's complaints of cervicalgia (i.e., neck pain). *Id.* at 27. Dr. Onuoha assessed Plaintiff with cervical disc disorder and cervicalgia, for which he prescribed prednisone and acetaminophen. *Id.* at 28. The treatment records note "neck stiffness with reduced [range of motion] and paraspinal muscle tenderness; inmate can get up and go independently with normal stance and gait." *Id.*

On September 9, 2022, a nurse in Health Services evaluated Plaintiff, who complained of pain: "My neck is stiff and swollen and my back hurts. I think I need an MRI. I wasn't like this before I fell." *Id.* at 26. On exam, the nurse found Plaintiff to have decreased range of active motion of the cervical spine and thoracic spine. *Id.* at 25. The nurse instructed Plaintiff to continue taking the recently prescribed medications, and she placed him on the schedule for follow up regarding his request for an MRI or CT scan. *Id.*

Plaintiff was seen by Health Services on October 3, 2022, for complaints of chest pain. *Id.* at 23. On October 17, 2022, Dr. Onuoha saw Plaintiff for neck pain and headaches. *Id.* at 20. Plaintiff reported that he had been doing the range of motion exercises that Health Services had taught him. *Id.* On exam, Dr. Onuoha noted minimal neck stiffness and normal stance and gait, and he prescribed ibuprofen. *Id.*

On December 6, 2022, Plaintiff was seen by a nurse in Health Services for complaints that his neck was "still really hurting." *Id.* at 18. Dr. Onuoha examined Plaintiff on December 12, 2022, for complaints of neck pain and "transient neck swelling," among other ailments. *Id.* at 15. On exam, Dr. Onuoha noted mild neck stiffness, and he assessed cervical disc disorder and cervicalgia. *Id.* at 17.

On January 23, 2023, Plaintiff reported having "sharp pain in left side abdomen." *Id.* at 14. Dr. Onuoha ordered an x-ray, which was taken on January 30, 2023. *Id.* at 13. In his report, the radiologist noted mild to moderate amount of retained fecal material and mild levoscoliosis of the lumbar spine; the report does not note any fractures. *Id.*

On June 7, 2023, Plaintiff had a chronic care visit with Dr. Onuoha. *Id.* at 11. Treatment notes indicate that "cervicalgia and neck stiffness are reduced and inmate was advi[sed] to sustain [range of motion] exercises and use [over the counter] pain medications as needed." *Id.*

On August 21, 2023, Plaintiff was seen by a nurse in Health Services for complaints of muscle or joint ache that felt like a "knot on sternum." *Id.* at 9. On exam, the nurse noted that an area of the lower sternum was enlarged but that there was normal range of motion. *Id.*

By October 26, 2023, Plaintiff had transferred out of FCI Bennettsville and was housed in FCI Beckley. ECF No. 133-1 at 8. X-rays of Plaintiff's cervical spine were taken on October 26, 2023. *Id.* According to the radiologist's report, there was no radiographic evidence for acute compression fracture or an acute cardiopulmonary process, though the report noted chronic compression at C5 and C6, as well as minimal disc space narrowing and minimal lower cervical spine facet arthrosis. *Id.* Plaintiff was scheduled for an MRI of the cervical spine for January 2026, *id.* at 4, but a medical record from February 2026 indicates that Plaintiff was unable to complete the MRI due to claustrophobia, *id.* at 1.

## LEGAL STANDARD

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Id*. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id*. at 324.

Under this standard, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson*, 477 U.S. at 255. However, although the Court views all the underlying facts and inferences in the record in the light most favorable to the non-moving party, the non-moving "party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson*, 477 U.S. at 256). That is to say, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477

U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (noting "we are obliged to construe [a complaint's] allegations liberally and with the intent of doing justice"). However, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact when none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## DISCUSSION

Plaintiff has sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* ("FTCA"), alleging that following Plaintiff's fall from exercise equipment, Defendant's medical staff "refused to use concussion protocol," even though Plaintiff received a "violent blow to the skull" as part of the fall, and that Dr. Onuoha's "plan of course for medical treatment was not professional." ECF No. 66 at 4.

Defendant United States moves for summary judgment on Plaintiff's claim, arguing that Plaintiff has failed to meet his burden of proof and present evidence by a qualified expert regarding the standard of care for treatment of Plaintiff's medical condition, that Defendant violated that standard, or that the alleged breach of the standard of care was the proximate cause of his injuries. ECF No. 126 at 6–9.

## I. Evaluating FTCA Medical Malpractice Claims

The FTCA imposes tort liability on the United States only "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and only to the extent that "a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred," *id.* at § 1346(b)(1). The FTCA is a limited waiver of sovereign immunity, and, therefore, courts must strictly interpret and apply it. *United States v. Sherwood*, 312 U.S. 584, 590 (1941); *Gould v. U.S. Dep't of Health & Hum. Servs.*, 905 F.2d 738, 741 (4th Cir. 1990).

Under the FTCA, procedural matters are governed by federal law; however, the FTCA directs courts to examine substantive legal issues pursuant to the laws of the place where the act or omission occurred. *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991) ("A plaintiff has an FTCA cause of action against the government only if [he] would also have a cause of action under state law against a private person in like circumstances."). State law determines whether there is an underlying cause of action. *Id.*

South Carolina tort law governs this action because Plaintiff alleges he suffered medical malpractice while incarcerated at FCI Bennettsville in South Carolina. ECF No. 66 at 4; *see* 28 U.S.C. § 2674; *Molzof v. United States*, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law."); *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (explaining that the FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred"); *Miller*, 932 F.2d at 303.

To establish liability in a medical malpractice case under South Carolina law, a plaintiff must establish the following elements: (1) the recognized and generally accepted standards,

practices, and procedures in the community that would be exercised by competent physicians in the same specialty under similar circumstances; (2) the physician in question negligently deviated from the generally accepted standards, practices, and procedures; (3) such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured. *Dumont v. United States*, 80 F. Supp. 2d 576, 581 (D.S.C. 2000); *see also Brouwer v. Sisters of Charity Providence Hosps.*, 763 S.E.2d 200, 204 (S.C. 2014); *David v. McLeod Reg'l Med. Ctr.*, 626 S.E.2d 1, 3–4 (S.C. 2006). Plaintiff bears the burden of proof as to each element of his medical malpractice claim. *Dumont*, 80 F. Supp. 2d at 581.

Generally, a "plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants." *David*, 626 S.E.2d at 4; *Frederick v. United States*, No. CV 2:15-2699-MGL-BM, 2016 WL 1317528, at *7 (D.S.C. Mar. 14, 2016) ("[T]o proceed with a medical malpractice claim in South Carolina, Plaintiff must have actual *evidence* sufficient (for purposes of summary judgment) to create a genuine issue of fact that a physician or medical personnel negligently deviated from recognized and generally accepted standards, practices, and procedures with respect to his condition which would have been exercised by competent physicians in the same specialty under similar circumstances, and that such negligent deviation from this accepted standard of care proximately caused an injury to the Plaintiff." (citing *Dumont*, 80 F. Supp. 2d at 581)), *report and recommendation adopted,* No. CV 9:15-2699-MGL, 2016 WL 1301270 (D.S.C. Apr. 4, 2016), *aff'd,* 668 F. App'x 521 (4th Cir. 2016). Proximate cause also generally requires expert testimony. *See Bramlette v. Charter-Medical-Columbia*, 393 S.E.2d 914, 916 (S.C. 1990).

## II. Summary Judgment Is Warranted

Defendant contends that summary judgment should be granted because Plaintiff has not offered any expert testimony regarding the applicable standard of care, Defendant's failure to comply with that standard of care, or proximate cause. ECF No. 126 at 7–9.

Plaintiff does not dispute that he has not identified any expert, nor provided any expert opinion regarding the standard of care or any deviation therefrom, in this case. *See* ECF No. 133. Instead, he appears to argue that his medical malpractice claim falls within the common knowledge exception to the requirement for expert testimony, which applies where "the defendant's [alleged] careless acts are quite obvious, [such that] the plaintiff need not present expert testimony to establish the standard of care." *Brouwer*, 763 S.E.2d at 204 (citation omitted). Specifically, Plaintiff asserts, without citing any evidence or legal authority, that "[s]tandards of care and proximate cause issues regarding evaluation treatment and care of an alleged concussion and spinal/orthopedic injuries lies within the scope of common knowledge," that Defendant's "careless acts are quite obvious," and that "[t]reatment for spinal injuries were within common knowledge, as well as head trauma and (4) disc injuries located in the back area." ECF No. 133 at 3. He further suggests that there was medical negligence at FCI Bennettsville because "there were no MRIs, nor concussion protocols done for a skull, neck, back, and chest cavity injury, nor did the Plaintiff receive any treatment from an orthopedic or a bone specialist." *Id.* at 1. Upon review, the undersigned is unpersuaded by Plaintiff's arguments.

"The application of the common knowledge exception in proving negligence in a case involving medical malpractice depends on the particular facts of the case." *Brouwer*, 763 S.E.2d at 203–04 (citation and internal quotation marks omitted). "When expert testimony is not required, the plaintiff must offer evidence that rises above mere speculation or conjecture." *Id.*

The evidence in the record shows that Plaintiff received regular and ongoing care for his complaints of pain following his August 2022 fall, including x-rays of Plaintiff's head, neck, and spine taken within days of the fall; prescriptions for pain relief medication; and instruction on range-of-motion exercises. *See* ECF No. 133-1. Plaintiff's malpractice claim is premised on an argument that the treatment he received fell below the standard of care. Specifically, in his Second Amended Complaint, he alleges that Defendant's medical staff "refused to use concussion protocol," even though Plaintiff received a "violent blow to the skull" as part of the fall, and that Dr. Onuoha's "plan of course for medical treatment was not professional." ECF No. 66 at 4. Similarly, in his Response in Opposition to the Motion for Summary Judgment, Plaintiff argues that there was medical negligence at FCI Bennettsville because "there were no MRIs, nor concussion protocols done for a skull, neck, back, and chest cavity injury, nor did the Plaintiff receive any treatment from an orthopedic or a bone specialist." ECF No. 133 at 1.

However, "Plaintiff's own lay opinion that the medical care and treatment he received was improper and constituted malpractice is not itself competent *evidence* to support such a claim." *Frederick*, 2016 WL 1317528, at *7 (emphasis in original); *see David*, 626 S.E.2d at 4 ("In South Carolina, medical malpractice actions require a greater showing than generic allegations and conjecture."). Moreover, the subject matter at issue in Plaintiff's claim is not the type that can be evaluated based on common knowledge and experience.

Indeed, cases specifically discussing treatment for orthopedic, spinal, and head injuries have determined that the appropriate course of treatment falls outside the common knowledge exception. *See, e.g.*, *Hunter v. United States Gov't*, No. CV 0:20-2695-RMG-PJG, 2021 WL 1845081, at *1 & n.3 (D.S.C. Feb. 23, 2021) (concluding that inmate could not establish an FTCA medical malpractice claim based on alleged failure to provide follow-up treatment for injuries

associated with a past head and neck injury because the inmate did not submit expert witness testimony and such claims did not meet the common knowledge exception), *report and recommendation adopted,* No. 0:20-CV-2695-RMG, 2021 WL 1560444 (D.S.C. Apr. 21, 2021); *Brockenbaugh v. Fed. Bureau of Prisons*, No. CV 1:19-1971-HMH, 2020 WL 3026469, at *2 (D.S.C. June 5, 2020) (concluding that claim based on defendant's decisions regarding plaintiff's "medical care and treatment plan" for back pain was not within common knowledge and consequently required expert testimony to establish the standard of care); *Modisette v. United States*, No. 1:18CV533 (LO/MSN), 2019 WL 6337409, at *5 (E.D. Va. Nov. 26, 2019) (concluding that Plaintiff's claims regarding BOP doctor's alleged failure "to diagnose Plaintiff's neck injury and to treat his injuries appropriately and expeditiously" did not fall within the range of a jury's common knowledge and experience and, thus, required expert testimony), *aff'd,* 805 F. App'x 241 (4th Cir. 2020); *Prozer v. United States*, No. CIV.A. 9:14-1249-TMC, 2014 WL 6686697, at *4 (D.S.C. Nov. 25, 2014) (concluding that establishing "how to evaluate significant head and facial trauma injuries, or what standards are used for determining whether to order an x-ray for a patient," requires expert testimony because they lie outside the ambit of common knowledge and experience), *aff'd,* 600 F. App'x 897 (4th Cir. 2015); *Parker v. United States*, 475 F. Supp. 2d 594, 597 (E.D. Va. 2007) ("[I]t is difficult to imagine that a factfinder, equipped solely with an average person's common knowledge and experience, may appropriately judge, *inter alia,* (i) what actions the prison medical staff should have taken when plaintiff complained of headaches . . . and (iii) what the proper course of treatment was for plaintiff's condition").

Similarly, courts have found that a doctor's decision to order an x-ray but not an MRI, and whether that decision deviates from the standard of care, does not fall within the common knowledge exception. *See Modisette*, 2019 WL 6337409, at *5 ("Whether a doctor's decision to

conduct an x-ray, MRI, or other imaging procedure while foregoing another constitutes a violation of his or her duty is not a matter of 'common knowledge and experience.' Similarly, whether physicians deviate from their standard of care by waiting to provide a patient diagnostic assessment or treatment within a certain timeframe is a question answerable only by an expert."); *Prozer*, 2014 WL 6686697, at *4 (explaining that expert testimony is required to establish "what standards are used for determining whether to order an x-ray for a patient").

Without medical testimony stating otherwise, the court cannot determine whether the treatment provided to Plaintiff after his fall was below the standard of care or whether any negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of Plaintiff's injuries. *See Dumont*, 80 F. Supp. 2d at 581. "To the extent Plaintiff attempts to claim Defendant should have affirmatively acted in a particular way, he forfeited that argument by failing to establish the appropriate standard of care through expert testimony." *Reid v. United States*, No. 22-CV-1687-SAL, 2024 WL 63869, at *5 (D.S.C. Jan. 5, 2024) (granting summary judgment on FTCA medical malpractice claims related to treatment for epididymal cysts and varicocele, shoulder injuries, and chronic pain upon finding that "the proper treatment plan was not 'so obvious' that a layperson could find Defendant liable for malpractice").

Because Plaintiff has not presented any expert testimony whatsoever and his circumstances do not fall within the common knowledge exception, summary judgment on his remaining medical malpractice claim should be granted in favor of Defendant. *See id.*

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. 126, be **GRANTED**, and that this case be **DISMISSED**.

**The parties are referred to the Notice Page attached hereto.**

Molly H. Cherry
United States Magistrate Judge

October 16, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).